APPEAL NO. 26-1508

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

NOAH PETERSEN,

*Plaintiff / Appellee,*

vs.

CITY OF NEWTON, IOWA, MICHAEL HANSEN, Mayor of Newton, sued in his official and individual capacity, and ROB BURDESS, Chief of the Newton Police Department, sued in his official and individual capacity,

*Defendants / Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION
Case No.: 4:23-CV-00408-SMR-SBJ

## BRIEF OF APPELLANTS CITY OF NEWTON, IOWA, MICHAEL HANSEN AND ROB BURDESS

Jason C. Palmer, #AT0006089   and   Cathy S. Trent-Vilim, #AT0012856
Georgia R. Rice, #AT0015229          Lamson Dugan & Murray LLP
Lamson Dugan & Murray LLP            10306 Regency Parkway Drive
6400 Westown Parkway, Suite 280      Omaha, NE 58114
West Des Moines, IA  50266           Tel:  (402) 397-7300
Tel:  (515) 513-5003                 ctrent-vilim@ldmla.com
jpalmer@ldmlaw.com
grice@ldmlaw.com

# SUMMARY OF THE CASE
# AND REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellee Noah Petersen ("Plaintiff") sued the City of Newton, Iowa, Mayor Michael Hansen ("Mayor Hansen"), and Police Chief Rob Burdess ("Chief Burdess") after being arrested at City Council meetings on October 3 and October 24, 2022. At both meetings, Mayor Hansen instructed Plaintiff to stop speaking during the citizen participation comment period due to Plaintiff's defamatory comments against certain members of the City of Newton police deparment. After Plaintiff failed to cease speaking or leave the podium, despite being given multiple opportunities to comply, he was arrested for disorderly conduct.

Plaintiff's nine-count complaint alleges First Amendment retaliation, prior restraint, Fourth Amendment wrongful arrest, and equal protection violations. The district court granted summary judgment to Plaintiff on all liability claims except prior restraint, denied qualified immunity to Mayor Hansen and Chief Burdess, and granted Defendants summary judgment on the prior restraint claim. Defendants timely appealed.

Defendants request fifteen minutes of oral argument.

Appellate Case: 26-1508    Page: 2    Date Filed: 06/05/2026 Entry ID: 5648090

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT .............i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ......................................................................... vi

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES ....................................................................2

STATEMENT OF THE CASE.........................................................................5

SUMMARY OF THE ARGUMENT .............................................................11

ARGUMENT ................................................................................................14

      I.      STANDARD OF REVIEW...............................................................14

      II.     THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO MAYOR HANSEN AND CHIEF BURDESS, AND IN GRANTING PARTIAL SUMMARY JUDGMENT AGAINST THEM, SINCE THE LAW DID NOT CLEARLY ESTABLISH THAT ARRESTING A SPEAKER WHO REFUSES TO LEAVE THE PODIUM AFTER BEING RULED OUT OF ORDER FOR DEFAMATORY COMMENTS VIOLATES THE FIRST OR FOURTH AMENDMENT, AND NEITHER DEFENDANT WAS PERSONALLY INVOLVED IN BOTH ARRESTS ........................15

           A.     Qualified Immunity Law...........................................................15

           B.     First Amendment Law.............................................................17

           C.     Fourth Amendment Law .........................................................19

D. The district court erred in denying Chief Burdess qualified immunity on Plaintiff's First and Fourth amendment claims, and in granting partial summary judgment against him on these claims ...............................................................................19

    1. The law was not clearly established that arresting a city council attendee, who refuses to leave the podium after being ruled out of order by the presiding officer for making defamatory comments, violates the First or Fourth Amendments .......................................................20

    2. Chief Burdess is entitled to qualified immunity since Plaintiff's arrests were supported by arguable probable cause...................................................................................23

        a. Plaintiff's October 3 arrest for disorderly conduct was supported by at least arguable probable cause. Chief Burdess only arrested Plaintiff after he was ruled out of order by the Mayor and refused to leave the podium despite being given multiple opportunities to do so ...........................................24

        b. Chief Burdess is entitled to qualified immunity on Plaintiff's claims arising from his October 24 arrest because Chief Burdess did not personally arrest Plaintiff and Plaintiff's arrest was supported by at least arguable probable cause ......................28

E. The district court erred in finding that Mayor Hansen was not entitled to qualified immunity, and in entering partial summary judgment against him on Plaintiff's First and Fourth Amendment claims. Mayor Hansen reasonably believed Plaintiff's statements were defamatory, and thus not protected free speech, and Mayor Hansen did not personally arrest Plaintiff on either occasion ...................................................31

    1. Mayor Hansen did not personally arrest Plaintiff on either occasion ..............................................................31

    2. Mayor Hansen reasonably believed Plaintiff's statements were defamatory and not protected speech ...................33

iii

Appellate Case: 26-1508    Page: 4    Date Filed: 06/05/2026 Entry ID: 5648090

a. October 3 ...................................................................34

b. October 24 .................................................................34

III. THE DISTRICT COURT ERRED IN DENYING MAYOR HANSEN AND CHIEF BURDESS QUALIFIED IMMUNITY ON PLAINTIFF'S SELECTIVE ENFORCEMENT CLAIM SINCE THE COURT IDENTIFIED NO SIMILARLY SITUATED COMPARATORS AND CITED NO FACTUALLY ANALOGOUS PRECEDENT TO SUPPORT ITS CLEARLY ESTABLISHED LAW FINDING ...................................................................35

A. October 3 ...................................................................37

B. October 24 .................................................................39

IV. THE DISTRICT COURT ERRED IN IMPOSING *MONELL* LIABILITY AGAINST THE CITY WHERE THE RULE HAD NEVER BEEN JUDICIALLY INVALIDATED, THE CITY RELIED ON THE OPINION OF ITS LEGAL COUNSEL, AND THE UNDISPUTED FACTS ESTABLISHED NEITHER AN UNCONSTITUTIONAL OFFICIAL POLICY NOR A PLAN TO RE-ARREST PLAINTIFF ...................................................................40

A. The Court has appellate jurisdiction over the City's appeal.....40

B. *Monell* Law ...................................................................40

C. The district court erred in finding the City liable under *Monell* ...................................................................41

    1. The district court applied the wrong standard ................42

    2. The undisputed facts to not support the existence of a plan to re-arrest Plaintiff.................................................43

    3. Even if such a plan existed, it did not exist prior to Plaintiff's October 3 arrest.................................................44

    4. The Citizen Participation Rule was not an official policy of the City .................................................44

iv

CONCLUSION ...........................................................................................46

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32 ............................47

CERTIFICATE OF COMPLIANCE WITH 8TH CIR. R. 28A(h)(2) ....................47

CERTIFICATE OF SERVICE .........................................................................48

Appellate Case: 26-1508    Page: 6    Date Filed: 06/05/2026 Entry ID: 5648090

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Aldridge v. City of St. Louis,*
　75 F.4th 895 (8th Cir. 2023) ...................................................................15, 16, 18

*Arnold v. McClinton,*
　112 F.4th 598 (8th Cir. 2024) .........................................................................15, 16

*Ashcroft v. Iqbal,*
　556 U.S. 662, 676 (2009)...........................................................................28, 31, 32

*Ashcroft v. al-Kidd,*
　563 U.S. 731 (2011)..............................................................................................16

*Bandstra v. Covenant Reformed Church,*
　913 N.W.2d 19 (Iowa 2018) ...............................................................................33

*Bauer v. Brinkman,*
　958 N.W.2d 194 (Iowa 2021) .............................................................................33

*Bd. of Cnty. Comm'rs v. Brown,*
　520 U.S. 397 (1997)..............................................................................................41

*Beauharnais v. Illinois,*
　343 U.S. 250, 266 (1952)......................................................................................33

*Bell v. Neukirch,*
　979 F.3d 594 (8th Cir. 2020) ...............................................................................29

*Borgman v. Kedley,*
　646 F.3d 518 (8th Cir. 2011) ...........................................................................19, 24

*Cent. Specialties, Inc. v. Large,*
　18 F.4th 989 (8th Cir. 2021) ...........................................................................16, 23

*Ching ex rel. Jordan v. City of Minneapolis,*
　73 F.4th 617 (8th Cir. 2023) ...........................................................................15, 16

Appellate Case: 26-1508　　Page: 7　　Date Filed: 06/05/2026 Entry ID: 5648090

*City of St. Louis v. Praprotnik,*
 485 U.S. 112, 130 (1988)..................................................................45

*Counterman v. Colorado,*
 600 U.S. 66 (2023)..........................................................................33

*Davis v. Hennepin Cnty.,*
 No. CIV08-5320 JNE/AJB, 2010 WL 1507618, at *11 (D. Minn. Mar. 10, 2010), *report and recommendation adopted as modified,* No. CIV08-5320JNE/AJB, 2010 WL 1507616 (D. Minn. Apr. 14, 2010), *Aff'd,* 402 F. App'x 147 (8th Cir. 2010)................................................26

*Davison v. Rose,*
 19 F.4th 626 (4th Cir. 2021) ........................................2, 17, 18, 22

*DuBose v. Kelly,*
 187 F.3d 999 (8th Cir. 1999) ..........................................................15

*Ehlers v. City of Rapid City,*
 846 F.3d 1002 (8th Cir. 2017) ..........................................................1

*Felton v. Griffin,*
 No. 04-16666, 185 F. App'x 700 (9th Cir. 2006) ....................2, 17, 18, 26, 33

*Fisher v. Wal-Mart Stores, Inc.,*
 619 F.3d 811 (8th Cir. 2010) ..............................................19, 24, 30

*Galanakis v. City of Newton, Iowa,*
 134 F.4th 998 (8th Cir. 2025)....................................................34, 40

*Garang v. City of Ames,*
 2 F.4th 1115 (8th Cir. 2021) ..............................................19, 23, 24

*Gilani v. Matthews,*
 843 F.3d 342 (8th Cir. 2016)........................................................4, 36

*Hayek v. City of St. Paul,*
 488 F.3d 1049 (8th Cir. 2007)......................................................41, 45

*Heffron v. Int'l Soc. For Krishna Consciousness, Inc.,*
 452 U.S. 640 (1981)..........................................................................17

Appellate Case: 26-1508    Page: 8    Date Filed: 06/05/2026 Entry ID: 5648090

*Hollingsworth v. City of St. Ann*,
 800 F.3d 985 (8th Cir. 2015) ...................................................................16

*Iancu v. Brunetti*,
 588 U.S. 388 (2019).................................................................................21

*Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Polson*,
 569 N.W.2d 612 (Iowa 1997) ..................................................................33

*Janklow v. Newsweek, Inc.*,
 788 F.2d 1300, 1302 (8th Cir. 1986) .......................................................34

*Johnson v. McCarver*,
 942 F.3d 405 (8th Cir. 2019) ...................................................................16

*Kampas v. City of St. Louis, Missouri*,
 157 F.4th 937 (8th Cir. 2025) ..................................................................19

*Lockridge v. Bd. of Trustees of Univ. of Arkansas*,
 315 F.3d 1005 (8th Cir. 2003)..................................................................40

*Madewell v. Roberts*,
 909 F.2d 1203 (8th Cir. 1990) .....................................................28, 31, 32

*Matal v. Tam*,
 582 U.S. 218 (2017).................................................................................21

*McElree v. City of Cedar Rapids*,
 372 F. Supp. 3d 770 (N.D. Iowa 2019)...............................................41, 45

*McDonough v. Garcia,*
 116 F.4th 1319 (11th Cir. 2024) ..............................................................17

*Monell v. Department of Social Services of City of New York*,
 436 U.S. 658 (2018)...................................................................................4

*Morgan v. Robinson*,
 920 F.3d 521 (8th Cir. 2019) .................................................2, 16, 19, 20, 21

*Mullenix v. Luna*,
 577 U.S. 7 (2015)..................................................................16, 20, 34, 35

viii

Appellate Case: 26-1508    Page: 9    Date Filed: 06/05/2026 Entry ID: 5648090

*Nieters v. Holtan*,
83 F.4th 1099 (8th Cir. 2023)........................................................14, 42

*Nieves v. Bartlett*,
587 U.S. 391, 401 (2019)........................................................19, 23, 30

*Nord v. Walsh Cty.*,
757 F.3d 734 (8th Cir. 2014) ........................................................16, 21

*Novak v. City of Parma*,
932 F.3d 421 (6th Cir. 2019) ........................................................22

*Olson v. Bloomberg*,
339 F.3d 730 (8th Cir. 2023) ........................................................14

*Parratt v. Taylor*,
451 U.S. 527 (1981)........................................................15

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)........................................................44

*Robbins v. City of Des Moines*,
984 F.3d 673 (8th Cir. 2021)........................................................4, 40

*Rogers v. King*,
885 F.3d 1118 (8th Cir. 2018) ........................................................40, 41

*Sanimax USA, LLC v. City of S. St. Paul*,
95 F.4th 551 (8th Cir. 2024)........................................................3, 36, 39, 43

*Santiago v. Blair*,
707 F.3d 984 (8th Cir. 2013) ........................................................18, 19

*Shannon v. Koehler*,
616 F.3d 855 (8th Cir. 2010) ........................................................1, 40

*Sparr v. Ward*,
306 F.3d 589 (8th Cir. 2002) ........................................................17

*Stanton v. Sims*,
571 U.S. 3, 6 (2013) (per curiam)........................................................19, 20

ix

*State v. Allen,*
741 N.W.2d 824 (Iowa Ct. App. 2007) ....................................................25

*State v. DeWitt,*
674 N.W.2d 683 (Iowa Ct. App. 2003) ...................................................25

*State v. Hansen,*
760 N.W.2d 210 (Iowa Ct. App. 2008) ...................................................25

*State v. Hardin,*
498 N.W.2d 677 (Iowa 1993) .................................................................25

*State v. Martin,*
822 N.W.2d 746 (Iowa Ct. App. 2012) ...................................................25

*Taggart v. Drake Univ.,*
549 N.W.2d 796 (Iowa 1996) .................................................................33

*Taylor v. Barkes,*
135 S. Ct. 2042 (2015)......................................................................16, 22

*Tilson v. Forrest City Police Dept.,*
28 F.3d 803 (8th Cir. 1994) ....................................................................28

*Tyler v. City of Kingston,*
74 F.4th 57, 63 (2d Cir. 2023) ................................................................17

*United States v. Grace,*
461 U.S. 171, 178 (1983)........................................................................17

*Vinson v. Linn-Mar Cmty. Sch. Dist.,*
360 N.W.2d 108 (Iowa 1984) .................................................................33

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989)..........................................................................17, 18

*Ward v. City of Sherwood, Arkansas,*
173 F.4th 994 (8th Cir. 2026).................................................................19

*Watertown Equip. Co. v. Norwest Bank Watertown, N.A.,*
830 F.2d 1487, 1495 (8th Cir. 1987) ......................................................27

x

*Wayte v. United States,*
470 U.S. 598 (1985)................................................................37, 38

*White v. Jackson*,
865 F.3d 1064 (8th Cir. 2017) .................................................15

*Wilson v. Layne*,
526 U.S. 603 (1999)..............................................................16, 17

## STATUTES

28 U.S.C. § 1292 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

42 U.S.C. § 1983 ...........................................................1, 2, 3, 4, 15

Iowa Code § 708.2A .................................................................33

Iowa Code section 723.4 (2022) .................................................24, 25

## OTHER

U.S. Const., amend. I .................................................................2

U.S. Const., amend. XIV .............................................................2, 3

Appellate Case: 26-1508    Page: 12    Date Filed: 06/05/2026 Entry ID: 5648090

# JURISDICTIONAL STATEMENT

Plaintiff filed this case in the United States District Court for the Southern District of Iowa, Central Division, on October 12, 2023. Jurisdiction was conferred to the district court pursuant to 28 U.S.C. § 1331, because Plaintiff alleged claims pursuant to 42 U.S.C. § 1983.

The district court denied Defendants' motion for summary judgment as to Counts I-IV and VI-IX, granted Defendants' motion for summary judgment as to Count V, granted Plaintiff's motion for summary judgment on liability as to Counts I-IV and VI-IX, and denied Plaintiff's motion for summary judgment on laibility as to Count V on February 23, 2026. Defendants filed a timely notice of appeal on March 17, 2026. This Court's jurisdiction is based on 28 U.S.C. § 1292, which provides for jurisdiction over an interlocutory decision from a United States District Court, and the district court's denial of qualified immunity for Defendants. *See Shannon v. Koehler*, 616 F.3d 855, 860 (8th Cir. 2010); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) ("We have authority under the collateral order doctrine to hear an interlocutory appeal of a denial of qualified immunity." (quoting *Shannon*, 616 F.3d at 861)). The Court is "limited to reviewing the denial of summary judgment only insofar as it concerns questions of law, not factual disputes." *Id.*

Each appeal issue was ruled on by the lower court.

1

Appellate Case: 26-1508     Page: 13     Date Filed: 06/05/2026 Entry ID: 5648090

## STATEMENT OF THE ISSUES

I.    Under 42 U.S.C. § 1983, an official is entitled to qualified immunity from suit unless the plaintiff can demonstrate the official personally violated the plaintiff's clearly established constitutional rights. To be clearly established, the contours of the right must be sufficiently clear from decisions of the United States Supreme Court, or controlling authority from the jurisdiction, such that a reasonable official would have understood, beyond debate, that the defendant's conduct violated that right. Did the district court err when it denied qualified immunity to Mayor Hansen and Chief Burdess since the law did not clearly establish that arresting a speaker who refuses to leave the podium after being ruled out of order for defamatory comments violates the First or Fourth amendment, and neither defendant was personally involved in both arrests.

Most Apposite Cases:

*Morgan v. Robinson*, 920 F.3d 521, 522 (8th Cir. 2019)

*Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021)

*Felton v. Griffin*, No. 04-16666, 185 F. App'x 700 (9th Cir. 2006)

Most Apposite Statutes:

42 U.S.C. § 1983

U.S. Const., amend. I

U.S. Const., amend. XIV

2

II.     To succeed on a selective enforcement claim under 42 U.S.C. § 1983, a plaintiff must show both differential treatment from individuals similarly situated in all respects and discriminatory intent based on impermissible factors. Did the district court err in denying qualified immunity to Mayor Hansen and Chief Burdess on Plaintiff's selective enforcement claim where the court identified no similarly situated comparators at the October 24 meeting and cited no factually analogous precedent to support its clearly established law finding?

Most Apposite Cases:

*Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551 (8th Cir. 2024)

Most Apposite Statutes:

42 U.S.C. § 1983

U.S. Const., amend. XIV

3

III.     Under 42 U.S.C. § 1983, a municipality is subject to *Monell* liability only when a constitutional violation results from an official policy, an unofficial custom, or a deliberately indifferent failure to train. Did the district court err in imposing *Monell* liability where the City relied on the unchallenged opinion of its legal counsel, who lacked rule-making authority, the rule had never been judicially invalidated, and the undisputed facts established neither an unconstitutional official policy nor a pre-arrest plan to arrest Plaintiff?

Most Apposite Cases:

*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (2018)

*Robbins v. City of Des Moines*, 984 F.3d 673 (8th Cir. 2021)

*Gilani v. Matthews*, 843 F.3d 342 (8th Cir. 2016)

Most Apposite Statutes:

42 U.S.C. § 1983

Appellate Case: 26-1508     Page: 16     Date Filed: 06/05/2026 Entry ID: 5648090

Plaintiff Noah Petersen ("Plaintiff") was ruled out of order while speaking at the City of Newton, Iowa ("City") city council meeting on October 3, 2022. (App. 132-33; R. Doc. 24-1, at 7-8, ¶ 29). Plaintiff stated he was not out of order, attempted to continue with his comments, and stated he was going to speak for his three-minute period. (*Id.*). When Police Chief Rob Burdess ("Chief Burdess") told Plaintiff he would be arrested if he did not leave chambers, Plaintiff said "arrest me, then." (App. 134; R. Doc. 24-1, at 9, ¶ 29). After Plaintiff continued to refuse to leave chambers and continued to say he was not leaving until his three minutes had expired, Chief Burdess asked Plaintiff if he wanted to be arrested and Plaintiff responded, "[s]ure. Arrest me, then." (App. 134-35; R. Doc. 24-1, at 9-10, ¶ 29).

Plaintiff was speaking during the citizen participation period of the meeting. (App. 132; R. Doc. 24-1, at 7, ¶ 28). The 2018 Procedural Rules of the Newton City Council, which were in effect in 2022, included the following relevant rules, in relevant part:

Part V. Citizen Participation

Rule 33. Citizen's Right to Address Council. The City of Newton is supportive of citizen participation at City Council meetings. In order to ensure that citizen participation occurs in an orderly fashion, the guidelines below must be utilized by persons wishing to speak at the Council meeting. By following these guidelines, persons can be assured that their viewpoint, concerns and comments are brought to the attention of the Council members prior to and during their decision-making process.

Appellate Case: 26-1508    Page: 17    Date Filed: 06/05/2026 Entry ID: 5648090

Rule 34. Manner of Addressing Council. A person desiring to address the Council must first be recognized by the Mayor. After being recognized by the Mayor, speakers shall proceed to the podium, use the microphone, state his or her name, address, and group affiliation (if any), speak clearly and address his or her comments to the presiding officer.

Rule 35. Time Limit on Citizen's Remarks. Citizens shall be limited to three minutes speaking time per item. . .

Rule 36. Remarks of Citizens to be Germane. Citizen comments must be directed to the subject under consideration and must be related to City policies or the provision of City services. . . . Citizens making irrelevant remarks or who use profanity may be barred by the presiding officer from further comment before the Council during the meeting. The presiding officer shall rule on the germaneness of citizen comments.

(App. 127-28; R. Doc. 24-1, at 2-3, ¶ 8). The agenda on October 3, 2022, included

the following language:

**Citizen Participation**: This is the time of the meeting that a citizen may address the Council on matters that are included in the consent agenda or a matter that is not on the regular agenda. After being recognized by the Mayor, each person will be given three (3) minutes to speak. Comments and/or questions must be related to City policies or the provision of City services and shall not include derogatory statements or comments about any individual. . .

(App. 131; R. Doc. 24-1, at 6, ¶ 22). This language was not in the 2018 Procedural

Rules of the Newton City Council, and as such, was not voted on by the Council.

(*Id.* at ¶ 23). This language will be referred to as the "rule" throughout this brief.

This rule had been stated on the city council meeting agendas since November

2019. (App. 764; R. Doc. 27-2, at 327). The rule had never been challenged, let

alone deemed unconstitutional. The rule had been declared constitutional by legal

counsel, including as recently as October 24, 2022. (App. 138-39; R. Doc. 24-1, at

6

13-14, ¶ 51). There was an attorney on the city council who had heard the rule read at the start of every city council meeting and never raised a concern. (App. 1025-26; R. Doc. 27-2, at 588-89).

October 3, 2022, City Council Meeting

During the citizen participation period of the October 3, 2022, city council meeting, Plaintiff spoke. (App. 132; R. Doc. 24-1, at 7, ¶ 28). He said the Newton Police Department "are also pro domestic abuse, because they are currently employing a domestic abuser and choosing not to release the records about that domestic abuse." (App. 132-33; R. Doc. 24-1 at 7-8, ¶ 29). Mayor Hansen ruled Plaintiff out of order and Plaintiff continued to debate back and forth with Mayor Hansen about whether Plaintiff was violating the rules. (App. 132-35; R. Doc. 24-1, at 7-10, ¶ 29). Mayor Hansen requested Chief Burdess's assistance, and Plaintiff then debated back and forth with Chief Burdess about whether Plaintiff was going to leave chambers as requested. (*Id.*). Chief Burdess gave Plaintiff four (4) opportunities to leave chambers and avoid arrest, and twice warned Plaintiff that if he continued to remain at the podium he could be arrested. (*Id.*).

After refusing to leave, Chief Burdess placed Plaintiff under arrest and escorted him out of the chambers. (App. 136; R. Doc. 24-1, at 11, ¶ 36). Plaintiff was charged with violating Iowa Code Section 723.4(1)(D) for disorderly conduct based on disrupting/disturbing a lawful assembly and taken into custody. (*Id.* at ¶

7

37).[1] Mayor Hansen did not order Plaintiff's arrest and lacked the authority, as mayor, to order any law enforcement agent to effectuate an arrest. (*Id.* at ¶ 35).

After the October 3 meeting, Mayor Hansen met with Chief Burdess and the city administrator. (App. 872-74; R. Doc. 27-2, at 435-437.) During the meeting, Mayor Hansen explained that he had never encountered a similar situation at a city council meeting and asked what the council should do to ensure it ran an orderly business meeting. (App. 873; R. Doc. 27-2, at 436.) They thus thought it prudent to meet and discuss how to handle a similar situation if it were to happen again. (*Id.*). After some discussion, they determined they would suspend the meeting if they encountered another speaker during the public comments portion of the meeting making defamatory statements. (App. 873-74; R. Doc. 27-2, at 436-37). There was no plan about what to do after the meeting was suspended. (App. 876; R. Doc. 27-2, at 439). It would depend on what was occurring at that time. (*Id.*).

In addition to conferring with the Chief and city administrator, Mayor Hansen reached out to legal counsel for the City of Newton and asked that counsel review the citizen participation rule to confirm that it was compliant with the First Amendment. (App. 882-83; R. Doc. 27-2, at 445-46; App. 138-39; R. Doc. 24-1, at

---

[1] The District Court for Jasper County found probable cause for each of Plaintiff's arrests. (App. 146; R. Doc. 24-1, at 21, ¶ 74, 76).

Appellate Case: 26-1508    Page: 20    Date Filed: 06/05/2026 Entry ID: 5648090

13-14, ¶ 51.) Mayor Hansen was assured that it was. (App. 882-83; R. Doc. 27-2, at 445-46).

<u>October 24, 2022, City Council Meeting</u>

Plaintiff also attended the council meeting on October 24, 2022, and spoke during the citizen participation period of the meeting. (App. 139; R. Doc. 24-1, at 14, ¶ 52). He said, "I think the top two fascists in this town, Mayor Michael Hansen and the chief of police, need to be removed from power." (App. 140; R. Doc. 24-1, at 15, ¶ 53). Mayor Hansen stated that Plaintiff was violating council rules and instructed Plaintiff to cease further comments. (App. 140-42; R. Doc. 24-1, at 15-17, ¶ 53). As with the October 3 meeting, Plaintiff verbally sparred with Mayor Hansen as well as a police officer stationed at the meeting. (App. 141-43; R. Doc. 24-1, at 16-18). Eventually, after he again repeatedly failed to comply, Plaintiff was arrested by a lieutenant of the Newton Police Department and removed from chambers. (App. 143; R. Doc. 24-1, at 18, ¶ 59). Plaintiff was charged once more with violating Iowa Code Section 723.4(1)(D) but was not taken into custody. (App. 144; R. Doc. 24-1, at 19, ¶ 64).

Plaintiff filed his Complaint in the United States District Court for the Southern District of Iowa, Central Division, on October 12, 2023. (App. 1-56; R. Doc. 1, at 1-56). The nine-count Complaint alleges the following causes of action against Defendants: (1) retaliation on October 3, 2022, against Mayor Hansen and

9

Chief Burdess in violation of the First and Fourteenth Amendments, (2) retaliation on October 24, 2022, against Mayor Hansen and Chief Burdess in violation of the First and Fourteenth Amendments, (3) retaliation on October 3, 2022, against the City in violation of the First and Fourteenth Amendments, (4), retaliation on October 24, 2022, against the City in violation of the First and Fourteenth Amendments, (5) free speech prior restraint against all Defendants in violation of the First and Fourteenth Amendments, (6) wrongful arrest and detention on October 3, 2022, against all Defendants in violation of the Fourth and Fourteenth Amendments, (7) wrongful arrest and detention on October 24, 2022, against all Defendants in violation of the Fourth and Fourteenth Amendments, (8) equal protection selective enforcement on October 3, 2022, against all Defendants in violation of the Fourteenth Amendment, and (9) equal protection selective enforcement on October 24, 2022, against all Defendants in violation of the Fourteenth Amendment. (*Id.*).

Defendants filed a motion for summary judgment on September 27, 2024. (App. 122-25; R. Doc. 24, at 1-4). Defendants argued they did not commit any constitutional violations and that Mayor Hansen and Chief Burdess were entitled to qualified immunity. (*Id.*). Plaintiff filed a motion for summary judgment on liability on October 7, 2024. (App. 361-64; R. Doc. 27, at 1-4). The district court issued its order regarding the cross-motions for summary judgment on February

10

23, 2026. (App. 1654-1689; R. Doc. 62, at 1-36). The district court granted Plaintiff's motion regarding liability for Counts I-IV and VI-IX, thus denying Defendants' motion regarding these counts. (App. 1689; R. Doc. 62, at 36). The district court granted Defendants' motion for Count V, thus denying Plaintiff's motion regarding this count. (*Id.*). Defendants timely appealed. (App. 1690-91; R. Doc. 63, at 1-2).

## SUMMARY OF THE ARGUMENT

The district court committed three categories of reversible error.

**First,** the district court erred in denying qualified immunity to Mayor Hansen and Chief Burdess on Plaintiff's First Amendment retaliation and Fourth Amendment unreasonable seizure claims. Qualified immunity protects officials unless the unlawfulness of their conduct was 'beyond debate.' The standard is purposely a demanding one; and that standard was not met here. The Eighth Circuit has never addressed whether a presiding officer at a city council meeting violates the First Amendment by stopping a speaker for making defamatory comments found to be in violation of a written decorum rule. Nor has it addressed whether probable cause is lacking when an officer arrests a speaker who refuses to cease speaking or leave the podium after being ruled out of order, despite being given several opportunities to avoid arrest. Absent controlling Eighth Circuit precedent, the district court relied on trademark cases from the U.S. Patent Office

11

and a non-analogous Sixth Circuit decision involving a parodied Facebook page. Neither source clearly established the law on the specific facts presented here. Moreover, Mayor Hansen reasonably believed at the time of both meetings that Plaintiff's statements were defamatory - a belief formed in good faith based on information from Chief Burdess about the officer in question and on the advice of the City's legal counsel. A subsequent judicial determination that those statements were 'substantially true' does not render Mayor Hansen's contemporaneous judgment objectively unreasonable. And Chief Burdess had, at a minimum, arguable probable cause to arrest Plaintiff for disorderly conduct on October 3, when Plaintiff refused, repeatedly and expressly, to stop speaking or leave the podium despite multiple warnings. Since neither Mayor Hansen nor Chief Burdess was personally involved in both arrests - Mayor Hansen did not arrest Plaintiff on either occasion and lacked authority to order an arrest, and Chief Burdess was not the arresting officer on October 24 – they cannot be subjected to personal liability under § 1983.

**Second,** the district court erred in denying qualified immunity on Plaintiff's selective enforcement claim. The court identified no similarly situated comparators at the October 24 meeting. However, liability for selective enforcement requires the identification of persons who were in all material respects identical to Plaintiff yet treated differently. The district court's ruling on October 24 selective

Appellate Case: 26-1508    Page: 24    Date Filed: 06/05/2026 Entry ID: 5648090

enforcement was unsupported by the factual record. And the district court's clearly established law analysis relied on a general equal protection principle from a factually remote case involving selective prosecution for draft registration refusal - not on a case that would have put Mayor Hansen and Chief Burdess on notice, 'beyond debate,' that their specific conduct was unconstitutional.

**Finally,** the district court erred in imposing *Monell* liability on the City. The citizen participation rule was not an unconstitutional official policy: Mayor Hansen drafted it, but the City Council retained override authority. Further, it had appeared on council agendas since 2019, without challenge or judicial invalidation, and had even been approved by legal counsel shortly before Plaintiff's October 24, 2022, arrest. Again, the record does not support the district court's order. Likewise, the district court's ratification theory is equally flawed. The post-October 3 meeting between Mayor Hansen, Chief Burdess, and the city administrator did not produce a plan to arrest Plaintiff - it produced a general protocol for handling circumstances neither Mayor Hansen nor Chief Burdess had ever encountered during a city council meeting. Moreover, there was no 'plan to arrest.' If law enforcement's involvement became necessary, the responding officer would exercise the same discretion as any other arrest based on the circumstances. Finally, no plan of any kind existed before the October 3 arrest, which alone defeats *Monell* liability as to Counts VI and VIII. And if this Court reverses on the individual defendants'

13

qualified immunity, the *Monell* claims necessarily fail for lack of an underlying constitutional violation.

## ARGUMENT

## I. STANDARD OF REVIEW.

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Nieters v. Holtan*, 83 F.4th 1099, 1105 (8th Cir. 2023) "Whether a given set of facts entitles [an] official to summary judgment on qualified immunity grounds is a question of law," *Olson v. Bloomberg,* 339 F.3d 730, 735 (8th Cir. 2003), subject to de novo review. *Nieters*, 83 F.4th at 1105. If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, summary judgment may not be granted on the issue. *Olson*, 339 F.3d at 735.

When evaluating Defendants' motion, the Court views the facts in the light most favorable to Plaintiff and draws all reasonable inferences in his favor; when evaluating Plaintiff's motion, the Court views the facts in the light most favorable to Defendants and draws all reasonable inferences in their favor. *Nieters*, 83 F.4th at 1105.

Appellate Case: 26-1508    Page: 26    Date Filed: 06/05/2026 Entry ID: 5648090

**II. THE DISTRICT COURT ERRED IN DENYING QUALIFIED IMMUNITY TO MAYOR HANSEN AND CHIEF BURDESS, AND IN GRANTING PARTIAL SUMMARY JUDGMENT AGAINST THEM, SINCE THE LAW DID NOT CLEARLY ESTABLISH THAT ARRESTING A SPEAKER WHO REFUSES TO LEAVE THE PODIUM AFTER BEING RULED OUT OF ORDER FOR DEFAMATORY COMMENTS VIOLATES THE FIRST OR FOURTH AMENDMENT, AND NEITHER DEFENDANT WAS PERSONALLY INVOLVED IN BOTH ARRESTS.**

Plaintiff brings his claims for violation of his Constitutional rights under 42 U.S.C. § 1983. This section authorizes suit against any person who, under color of state law, deprives another "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The two essential elements of a § 1983 action are "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

### A. Qualified Immunity Law.

"In a § 1983 action, an officer is entitled to qualified immunity unless: (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established." *Arnold v. McClinton*, 112 F.4th 598, 602 (8th Cir. 2024) (quoting

15

Appellate Case: 26-1508     Page: 27     Date Filed: 06/05/2026 Entry ID: 5648090

*Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023)). "[C]ourts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.' " *Nord v. Walsh Cty.,* 757 F.3d 734, 738 (8th Cir. 2014) (internal quotation marks omitted).

"A right is 'clearly established' only if the violation was 'beyond debate' such that only a plainly incompetent officer or a knowing lawbreaker would engage in the alleged misconduct." *Johnson v. McCarver*, 942 F.3d 405, 409 (8th Cir. 2019) (internal citation omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)).

The inquiry " 'must be undertaken in light of the *specific* context of the case, not as a broad general proposition.'" *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 996 (8th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis added)). "There need not be a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (quoting *Ashcroft*, 563 U.S. at 741.

There are three sources of clearly established law: (1) decisions of the U.S. Supreme Court, (2) controlling authority from the jurisdiction, including the highest court of the state, and (3) law of other jurisdictions when there is a

Appellate Case: 26-1508     Page: 28     Date Filed: 06/05/2026 Entry ID: 5648090

consensus of persuasive authority. *Wilson v. Layne*, 526 U.S. 603, 614-17 (1999). The plaintiff bears the burden of demonstrating the standard is met. *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002).

**B.     First Amendment Law.**

The First Amendment protects the right to free speech, but that right is not unlimited. "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. International Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981)). "The government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *United States v. Grace,* 461 U.S. 171, 178 (1983) (internal quotation marks omitted).

Although the Eighth Circuit has yet to address citizens' First Amendment rights at city council meetings specifically, other federal courts have concluded such meetings are limited public forums. *E.g., Tyler v. City of Kingston*, 74 F.4th 57, 63 (2d Cir. 2023); *McDonough v. Garcia*, 116 F.4th 1319 (11th Cir. 2024) (en banc); *Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021); *Felton v. Griffin*, 185 F. App'x 700 (9th Cir. 2006). As a limited public forum, the government can impose reasonable restrictions on time, place, and manner of speech. *Ward v. Rock Against*

17

*Racism*, 491 U.S. 781, 791 (1989). Boards and councils typically do this through the adoption of rules of procedure and conduct, including decorum rules.

The Eighth Circuit Court of Appeals also has not determined whether a citizen's First Amendment rights are violated when the citizen violates decorum rules and is ruled out of order. However, other federal courts of appeals – including in the recent past – have upheld decorum rules prohibiting personal attacks, slander, and impertinent speech. *E.g., Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021) (upholding school board's policy that limits the content of public comments to matters related to the public schools and does not allow comments "that are harassing or amount to a personal attack against any identifiable individual"); *Felton v. Griffin*, No. 04-16666, 185 F. App'x 700 (9th Cir. 2006) (holding that First amendment "does not protect slander" and that the city's decorum rule banning slander and "impertinent" or "personal" speech that actually disturbs or impedes a city council meeting was not overly broad under the First amendment).

Still, "[t]he First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Aldridge v. City of St. Louis*, 75 F.4th 895, 898 (8th Cir. 2023). For First Amendment retaliation claims, Plaintiff must show (1) protected activity, (2) adverse action that would chill a person of ordinary firmness, and (3) that the protected activity motivated the adverse action. *Santiago v. Blair*, 707 F.3d 984,

18

991 (8th Cir. 2013). Retaliatory-arrest claims require Plaintiff to also show a lack of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019).

### C. Fourth Amendment Law.

For Fourth Amendment claims, a warrantless arrest is constitutional if supported by probable cause. *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011). Officials are entitled to qualified immunity if there is at least 'arguable probable cause,' meaning the officer's mistaken belief that probable cause existed was objectively reasonable. *Garang v. City of Ames*, 2 F.4th 1115, 1121 (8th Cir. 2021); *Ward v. City of Sherwood, Arkansas*, 173 F.4th 994, 999 (8th Cir. 2026); *Kampas v. City of St. Louis, Missouri*, 157 F.4th 937, 945 (8th Cir. 2025). Probable cause is "not a high bar" and exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." *Id.* (citation omitted). "[O]fficers are not required to conduct a mini-trial before arrest." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 817 (8th Cir. 2010).

### D. The district court erred in denying Chief Burdess qualified immunity on Plaintiff's First and Fourth amendment claims, and in granting partial summary judgment against him on these claims.

"[Q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.' " *Morgan v. Robinson*, 920 F.3d 521, 524

19

(8th Cir. 2019) (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam)). The

threshold question is not whether Chief Burdess's conduct was ultimately

unconstitutional, but whether the unconstitutionality of that conduct was *clearly*

*established* at the time of Plaintiff's arrests. It was not.

> **1.      The law was not clearly established that arresting a city council attendee, who refuses to leave the podium after being ruled out of order by the presiding officer for making defamatory comments, violates the First or Fourth Amendments.**

In determining whether the law is clearly established, the court cannot rely

on general propositions; rather, the inquiry is "whether the violative nature of

*particular conduct* is clearly established." *Mullenix*, 577 U.S. at 12 (emphasis

added). The Eighth Circuit discussed the level of specificity needed to deny a

defendant qualified immunity in *Morgan,* 920 F.3d at 521. There, a deputy sued

the sheriff after the deputy ran against the sheriff and lost. The deputy claimed the

termination constituted First Amendment retaliation. The district court determined

there were issues of fact as to whether sheriff should have reasonably known the

termination was unlawful. *Id.,* at 523. A 3-judge panel affirmed.

After granting a petition for rehearing en banc, the Eighth Circuit reversed

and remanded. It determined that at the time of Morgan's termination, "the law

was not 'sufficiently clear' so that Robinson would have known that terminating

20

[Morgan] violated [Morgan's] First Amendment rights. Robinson is entitled to qualified immunity." *Morgan*, 920 F.3d at 527 (internal citations omitted).

The Court reached this determination notwithstanding the fact that in another Eighth Circuit case, involving similar facts, the Eighth Circuit assumed (based on the defendant's concession) that the sheriff's termination of his deputy violated the First amendment. *See Nord v. Walsh*, 757 F.3d 734 (8th Cir. 2014)[2]. In both cases, the Court concluded the defendant "could have logically and reasonably believe" that his actions were "well within the breathing room accorded him as a public official in making a reasonable, even if mistaken, judgment under the circumstances." *Id.* at 524 (quoting *Nord*, 757 F.3d at 743). *Morgan* thus demonstrates that even a factually similar case, from within the same federal circuit, does not necessarily clearly establish the law on a particular subject matter.

Unlike in *Morgan*, the district court had no comparable Eighth Circuit precedent. Instead, cited two Supreme Court trademark cases - *Iancu v. Brunetti*, 588 U.S. 388 (2019), and *Matal v. Tam*, 582 U.S. 218 (2017) - to support its clearly-established-law finding. Neither involved a city council meeting, a decorum rule, or an arrest. They address the Patent and Trademark Office's refusal

---

[2] The Eighth Circuit concluded the sheriff in *Nord* could have reasonably believed he was acting within the law by terminating the deputy "especially [because of] the advice given by the Walsh County attorney and its human resources consultant." *Nord*, 757 F.3d at 743.

21

to register marks it deemed immoral or scandalous. Case law about federal

trademark registration does not put a local police chief on notice that removing a

defiant speaker from a city council meeting violates the Constitution.

Absent Eighth Circuit precedent, the district court reached outside the circuit

and settled on a Sixth Circuit Court of Appeals case, *Novak v. City of Parma*, 932

F.3d 421, 431 (6th Cir. 2019), a case involving the arrest of a man who created a

Facebook page parodying the Parma Police Department. (App. 1669-70; R. Doc.

62, at 16-17.) *Novak* fails as clearly established authority for two reasons. First, it

is legally and factually remote: the sole basis for probable cause in *Novak* was the

speaker's speech in creating the parodied page. Here, the basis for arrest was

Plaintiff's *conduct*, that being his repeated refusal to stop speaking or leave the

podium after multiple warnings. Second, a single out-of-circuit decision does not

clearly establish the law for conduct within the Eighth Circuit. *See Taylor v.*

*Barkes*, 135 S. Ct. 2042, 2045 (2015).[3]

---

[3] Since the failure of the second prong of the qualified immunity analysis resolves
the issue on the merits, it is not necessary to reach the first prong of the analysis.
However, this prong is also not satisfied. Since city council meetings are limited
public forums, *see* Section II(C), *supra*, any restrictions on speech need only be
reasonable and viewpoint neutral. *Id*. The citizen participation rule is both. It is
reasonable because it allows the city council to "transact public business in an
orderly, effective, efficient and dignified manner." *Davison v. Rose*, 19 F.4th 626,
635 (4th Cir. 2021) (finding school board policy that did not allow comments "that
are harassing or amount to a personal attack against any identifiable individual" to
be a reasonable restriction because public attacks have the "potential fir causing
unnecessary delay or disruption"). It is also viewpoint neutral because it prohibits

Defendants do not dispute that citizens may criticize government officials, that viewpoint discrimination is prohibited, and that First Amendment retaliation is unlawful. But these general principles are precisely what the clearly-established-law standard prohibits relying upon. *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 996 (8th Cir. 2021). If a factually comparable intra-circuit case is insufficient, see *Morgan*, *supra*, the Supreme Court trademark cases and an out-of-circuit Facebook parody case fall far short.

### 2. Chief Burdess is entitled to qualified immunity since Plaintiff's arrests were supported by arguable probable cause.

Probable cause defeats claimed violation of a plaintiff's Fourth Amendment and First Amendment retaliatory-arrest claim. *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019). *Garang v. City of Ames*, 2 F.4th 1115, 1121 (8th Cir. 2021). "Probable cause exists when the totality of the circumstances at the time of the arrest is

---

all derogatory statements and comments about an individual, regardless of viewpoint. *Id*. (finding that the school board policy is "viewpoint neutral" because it "prohibits all personal attacks regardless of viewpoint."); (App. 131; R. Doc. 24-1, at 6, ¶ 22) (citizen participation rule providing that speakers "shall not include derogatory statements or comments about any individual")). While the district court treats the Mayor's testimony that supportive comments would "of course" not violate the rule, the district court mistakenly equates the rule's asymmetrical nature with viewpoint discrimination. A rule prohibiting defamatory statements would, by *definition*, apply asymmetrically: false, damaging statements of fact could violate it, while true or complimentary statements would not. That asymmetry is not viewpoint discrimination. It is the natural operation of a rule predicated on the falsity and damaging character of the statement.

Appellate Case: 26-1508    Page: 35    Date Filed: 06/05/2026 Entry ID: 5648090

sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." *Id.* (citation omitted). Government officials are entitled to qualified immunity if there "is at least 'arguable probable cause." *Garang*, 2 F.4th at 1121. Arguable probable cause "exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011). Whether arguable probable cause existed is a question of law for the court to determine. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

Here, each of Plaintiff's arrests was supported by at least arguable probable cause, and so Chief Burdess is entitled to qualified immunity on Plaintiff's First Amendment retaliatory arrest and Fourth amendment wrongful arrest claims.

> **a.  Plaintiff's October 3 arrest for disorderly conduct was supported by at least arguable probable cause. Chief Burdess only arrested Plaintiff after he was ruled out of order by the Mayor and refused to leave the podium despite being given multiple opportunities to do so.**

Plaintiff was arrested for disorderly conduct under Iowa Code § 723.4 (2022). (App. 136; R. Doc. 24-1, at 11, ¶ 36-37). In Iowa, a person commits the crime of disorderly conduct if he "without lawful authority or color of authority, [] disturbs any lawful assembly or meeting of persons by conduct intended to disrupt

24

the meeting or assembly." Iowa Code § 723.4 (2022)[4]. Thus, three elements are necessary: (1) the person disturbs a lawful assembly (2) by conduct intended to disrupt the assembly, and (3) the person does so without lawful authority or color of authority. *Id.* The Iowa Supreme Court analyzes "without lawful authority or color of authority" by considering: (1) the nature of the meeting involved; (2) whether the activity substantially impaired the conduct of the meeting; and (3) whether the defendants knew, or should have known, that their conduct violated an applicable or rule of the meeting. *State v. Hardin*, 498 N.W.2d 677, 680 (Iowa 1993).

Here, Chief Burdess had arguable probable cause – if not probable cause – to arrest Plaintiff for disorderly conduct on October 3. Plaintiff (1) disturbed the city council meeting - which is unquestionably a lawful assembly - by refusing to sit down once ordered to by Mayor Hansen, (2) intended to disrupt the assembly, as evidenced by his continued refusal to comply, and (3) acted without authority

---

[4] Iowa courts have found that probable cause to arrest a person for disorderly conduct based on a wide range of behaviors, including where the person impeded traffic by standing in the middle of a heavily traveled road during rush hour, *State v. Hansen*, 760 N.W.2d 210 (Iowa Ct. App. 2008); continuing to yell continued obscenities in a bar after being asked to quiet down by police officers who were responding to an unrelated fight between patrons, *State v. Allen*, 741 N.W.2d 824 (Iowa Ct. App. 2007); public intoxication, *State v. Martin*, 822 N.W.2d 746 (Iowa Ct. App. 2012); and fighting, *State v. DeWitt*, 674 N.W.2d 683 (Iowa Ct. App. 2003).

Appellate Case: 26-1508   Page: 37   Date Filed: 06/05/2026 Entry ID: 5648090

once the presiding officer of the meeting, Mayor Hansen, had ordered him to cease speaking. (App. 136; R. Doc. 24-1, at 11, ¶ 38).

Chief Burdess's belief that Plaintiff was acting without authority was consistent with the three-factor test set forth in *Hardin* because Plaintiff's conduct significantly impaired the conduct of the meeting by preventing other citizens from speaking or the city council from addressing other matters. Regardless of what Plaintiff said or why Mayor Hansen stopped his speech, Plaintiff refused to sit down or leave the chambers when asked by Mayor Hansen and Chief Burdess. Plaintiff's conduct *after* Mayor Hansen directed him to stop speaking created probable cause for his arrest for violation of the disorderly conduct statute. Indeed, courts in analogous circumstances have found probable cause. *E.g., Davis v. Hennepin Cnty.*, No. CIV08-5320 JNE/AJB, 2010 WL 1507618, at *11 (D. Minn. Mar. 10, 2010), *report and recommendation adopted as modified*, No. CIV08-5320JNE/AJB, 2010 WL 1507616 (D. Minn. Apr. 14, 2010), aff'd, 402 F. App'x 147 (8th Cir. 2010) (finding probable cause to arrest for disorderly conduct where the plaintiff, attending a public hearing on a new baseball stadium, refused to yield the podium and spoke in a raised voice); *Felton v. Griffin*, No. 04-16666, 185 F. App'x 700 (9th Cir. 2006) (holding that probable cause existed to arrest arrestee during city council meeting pursuant to municipal code where arrestee's conduct included using repetitive, loud, and abrasive language was disruptive and violated

26

the city's decorum rule banning slander and "impertinent" or "personal" speech that actually disturbs or impedes a city council meeting).

Chief Burdess also reasonably relied on a rule in place for three years without challenge, reviewed and approved by the city attorney, and declared constitutional by outside legal counsel. Although reliance on counsel is not dispositive, it bears on the officer's objective reasonableness. *See Watertown Equip. Co. v. Norwest Bank Watertown, N.A.*, 830 F.2d 1487, 1495 (8th Cir. 1987) ("Courts have generally found that the advice of an attorney may be a factor in shielding a defendant from liability under section 1983 . . . This Court has also recognized that although reliance on the advice of counsel alone will not satisfy an official's burden of acting reasonably, it may be a factor which bears on the question of qualified immunity.").

For these reasons, the district court erred when it concluded Chief Burdess is not entitled to qualified immunity for arresting Plaintiff on October 3, 2022. It was not clearly established that Chief Burdess lacked probable cause to arrest Plaintiff under these circumstances.

Appellate Case: 26-1508     Page: 39     Date Filed: 06/05/2026 Entry ID: 5648090

**b. Chief Burdess is entitled to qualified immunity on Plaintiff's claims arising from his October 24 arrest because Chief Burdess did not personally arrest Plaintiff and Plaintiff's arrest was supported by at least arguable probable cause.**

The district court also erred in finding Chief Burdess personally liable for Plaintiff's October 24 arrest. The law has long been clear: "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting a government official may only be liable "through the official's own individual actions"). Here, the arresting officer was Lieutenant Wing.

Nevertheless, the district court held Chief Burdess (and Mayor Hansen) liable because they 'helped develop the enforcement protocol and positioned Lieutenant Wing in the chambers.' (App. 1672; R. Doc. 62, at 19). But a supervisor's direction of subordinates and general knowledge of the situation is insufficient to establish individual § 1983 liability. *Tilson v. Forrest City Police Dept.*, 28 F.3d 803, 808 (8th Cir. 1994) (finding police chief's knowledge of plaintiff's arrests was insufficient to establish liability on behalf of police chief); *Ashcroft*, 556 U.S. at 677 ("a supervisor's mere knowledge of his subordinates" misconduct is insufficient to impose liability under section 1983).

28

To the extent this Court finds Chief Burdess was involved, the October 24 arrest rested on the same statutory and factual basis as October 3 - Plaintiff again refused to stop speaking after being ruled out of order, again verbally sparred with law enforcement, and again expressed his intention to continue doing so. Arguable probable cause supported the October 24 arrest for the same reasons.

The district court also cited to the criminal complaint filed after Plaintiff's October 24 arrest, which it found demonstrated a lack of probable cause and was "most telling" of Defendants' retaliatory intent. (App. 1670, R. Doc. 62, at 17.) The complaint, while inartfully drafted, does not establish the absence of probable cause. It establishes only that Lieutenant Wing described the precipitating events in colloquial terms rather than legal terms. Probable cause is assessed objectively, based on the totality of the circumstances known to the officer at the time of the arrest - not on the quality of the officer's written description of those circumstances. *See Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020). An officer's imprecise characterization of why he acted does not retroactively eliminate the objective facts that supported the arrest.

The objective facts here are undisputed: Plaintiff had been ruled out of order by the presiding officer, had refused to comply, had verbally sparred with the Mayor and law enforcement, and had expressly stated his intention to continue

29

doing so. Those facts constitute the elements of disorderly conduct under Iowa Code § 723.4(1)(D) regardless of how Wing described them in the complaint.

Moreover, Lieutenant Wing was not the official responsible for determining whether the Rule had been violated. The Mayor made that determination in his capacity as presiding officer. Wing's arrest was based on Plaintiff's conduct *after* that ruling, and the probable cause analysis turns on what Wing knew at that moment.[5] The Eighth Circuit does not require officers to compose legally precise probable cause analyses in charging documents; it requires only that the objective facts support the arrest. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 817 (8th Cir. 2010) (holding that officers are not required to conduct a "mini-trial" before arrest).

Finally, the clearly established law question for qualified immunity is not whether Wing articulated his probable cause finding correctly - it is whether it was clearly established that probable cause was absent. Even if the complaint language is treated as evidence of subjective retaliatory motive, that is insufficient to defeat qualified immunity where the objective facts supported the arrest. *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019) (providing that the probable cause inquiry is "objective").

---

[5] For the same reason, Mayor Hansen's statement about "activism," made after he ruled Plaintiff out of order, also does not defeat Lieutenant Wing's probable cause analysis.

Appellate Case: 26-1508   Page: 42   Date Filed: 06/05/2026 Entry ID: 5648090

For these reasons, the district court erred when it concluded Chief Burdess is not entitled to qualified immunity Plaintiff's claims related to his arrest on October 24, 2022. Chief Burdess was not individually involved in Plaintiff's arrest, which is required to impose section 1983 liability. Further, even if Chief Burdess was individually involved, Chief Burdess arrested Plaintiff based on a finding of probable cause, which defeats the claim of a First Amendment retaliatory arrest and a Fourth Amendment unlawful arrest Constitutional violation, and it was not clearly established that Chief Burdess acted unconstitutionally.

**E.      The district court erred in finding that Mayor Hansen was not entitled to qualified immunity, and in entering partial summary judgment against him on Plaintiff's First and Fourth Amendment claims. Mayor Hansen reasonably believed Plaintiff's statements were defamatory, and thus not protected free speech, and Mayor Hansen did not personally arrest Plaintiff on either occasion.**

Like Chief Burdess, the district court not only denied Mayor Hansen qualified immunity, it affirmatively granted partial summary judgment to Plaintiff on the merits of his First and Fourth amendment claims. The district court erred on both fronts.

**1.      Mayor Hansen did not personally arrest Plaintiff on either occasion.**

Mayor Hansen did not arrest Plaintiff on October 3 or October 24 and lacked authority as mayor to order law enforcement to effectuate an arrest. Because §1983 liability requires individual responsibility for the deprivation of rights, Mayor

31

Hansen cannot be held liable for Fourth Amendment violations he did not cause. *Madewell*, 909 F.2d at 1208; *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

To the extent the district court imposed liability based on Mayor Hansen's involvement in the post-October 3 meeting with the Chief and City Administrator, the district court misapplied the law. (App. 1671, R. Doc. 62, at 18.) The integral participant doctrine, as applied in the Eighth Circuit, requires that the official's participation be direct and meaningful - not merely that the official played a role somewhere in the chain of events. Here, the district court conflates two distinct acts: (1) Mayor Hansen's decision to rule Petersen out of order under the Rule, and (2) Chief Burdess's and Lieutenant Wing's independent decisions to arrest Petersen for disorderly conduct. These are legally distinct decisions by legally distinct actors. Mayor Hansen did not determine what crime to charge Petersen with, did not place Petersen under arrest, and lacked the authority as mayor to order any law enforcement officer to effectuate an arrest.

Where a presiding official refers a matter to law enforcement and law enforcement independently decides to arrest, the causal chain that the integral participant doctrine requires is broken by the intervening independent judgment of the arresting officer.

Appellate Case: 26-1508    Page: 44    Date Filed: 06/05/2026 Entry ID: 5648090

**2. Mayor Hansen reasonably believed Plaintiff's statements were defamatory and not protected speech.**

Mayor Hansen is also entitled to qualified immunity because in ruling Plaintiff out of order, the Mayor reasonably believed he was enforcing a valid rule. Slander and defamation are not protected under the First Amendment. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023); *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952); *Felton v. Griffin*, No. 04-16666, 185 F. App'x 700 (9th Cir. 2006) (slander). Under Iowa law, a defamation claim requires a plaintiff to show the defendant "(1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). To be defamatory, the speech must "be reasonably interpreted as stating actual facts about a person." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021).

Additionally, under Iowa law, an attack on a person's moral character may be defamatory per se. Iowa law considers some speech to be defamatory *per se*. *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984).[6] Domestic abuse is an indictable crime of moral turpitude in Iowa. *See* Iowa Code § 708.2A; and *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Polson*, 569 N.W.2d 612, 613-14 (Iowa 1997).

---

[6] Defamation per se has also been found in statements "accusing an individual of being a liar . . . accusing an individual of an indictable crime of moral turpitude or that carries a jail sentence . . . and accusing an individual of falsifying information." *Bandstra*, 913 N.W.2d at 47.

Appellate Case: 26-1508    Page: 45    Date Filed: 06/05/2026 Entry ID: 5648090

### a. October 3

At the October 3 meeting, Plaintiff stated the Newton Police Department 'are also pro domestic abuse, because they are currently employing a domestic abuser and choosing not to release the records about that domestic abuse.' (App. 132-33; R. Doc. 24-1, at 7-8, ¶ 29). This statement was directed at Officer Winters - an identifiable individual - and accused him of the crime of domestic abuse. Mayor Hansen reasonably believed the statement was false because prior to the meeting, Chief Burdess had informed Mayor Hansen that the domestic abuse allegations were not true. The district court's reliance on *Galanakis v. City of Newton*, 4:23-cv-00044-SHL, SBJ, 2024 WL 606235 (S.D. Iowa Feb. 8, 2024), for its "substantially true" determination in the qualified immunity context is misplaced. (App. 1674, R. Doc. 62, at 21). That ruling was issued nearly eighteen months *after* Plaintiff's arrest. A judicial determination made a year and a half later cannot retroactively establish that Mayor Hansen's contemporaneous, good-faith belief was objectively unreasonable.

### b. October 24

Similarly, at the October 24 meeting, Plaintiff called Mayor Hansen and Chief Burdess "fascists." (App. 140, R. Doc. 24-1, at 15, ¶ 53.) While Defendants acknowledge that *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302 (8th Cir. 1986), classifies such political epithets as protected opinion, the qualified immunity

34

question is whether Mayor Hansen's real-time judgment that the statement violated the Rule was objectively reasonable. Given the highly charged context and the absence of controlling precedent that every presiding officer would be expected to know, Mayor Hansen's judgment - even if ultimately incorrect - was not plainly incompetent. Qualified immunity protects exactly these reasonable, if mistaken, judgments. *Mullenix*, 577 U.S. at 12.

Mayor Hansen is entitled to qualified immunity for the claim of unlawful arrest based on his actions on October 24, 2022, because, as explained above, he did not effectuate the arrest on October 24 and even if he did, he is entitled to qualified immunity because it was not clearly established that he acted unconstitutionally in arresting Plaintiff when there was probable cause for the disorderly conduct arrest.

**III. THE DISTRICT COURT ERRED IN DENYING MAYOR HANSEN AND CHIEF BURDESS QUALIFIED IMMUNITY ON PLAINTIFF'S SELECTIVE ENFORCEMENT CLAIM SINCE THE COURT IDENTIFIED NO SIMILARLY SITUATED COMPARATORS AND CITED NO FACTUALLY ANALOGOUS PRECEDENT TO SUPPORT ITS CLEARLY ESTABLISHED LAW FINDING.**

Plaintiff alleges Defendants violated the equal protection clause of the Fourteenth Amendment by selectively enforcing the citizen participation rule against Plaintiff. (App. 51; R. Doc. 1, at 51, ¶ 232). Specifically, Plaintiff alleges that at the October 3 meeting, five other speakers made derogatory comments about the city's rental inspectors, but the rule was not enforced against these

35

similarly situated individuals and they were not stopped, arrested, charged, or prosecuted. (App. 51-52; R. Doc. 1, at 51-52, ¶ 233). Plaintiff also alleges that at the October 24 meeting other speakers violated other speaking rules without consequence. (App. 53; R. Doc. 1, at 53, ¶ 243-44).

To succeed on a selective enforcement claim, Plaintiff must show differential treatment from persons 'identical or directly comparable to the plaintiff in all material respects,' *Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 564 (8th Cir. 2024), and discriminatory intent. *Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016). For qualified immunity purposes, the law must have been clearly established that the specific enforcement decisions were unconstitutional.

The district court concluded that Mayor Hansen and Chief Burdess treated Plaintiff differently from similarly situated individuals and that this differential treatment was motived by retaliation for Plaintiff's exercise of his First Amendment right to criticize the police department and city leadership. (App. 1681-82; R. Doc. 62, at 28-29). The district court further found that Mayor Hansen and Chief Burdess are both individually liable for the selective enforcement and are not entitled to qualified immunity. (App. 1783-84; R. Doc. 62, at 31-32). The district court's order was erroneous and should be reversed.

Appellate Case: 26-1508    Page: 48    Date Filed: 06/05/2026 Entry ID: 5648090

### A.    October 3

The district court failed to cite to a factually similar case to show the law was clearly established that (1) Mayor Hansen could not stop Plaintiff from speaking because his speech was defamatory, or Mayor Hansens was reasonably mistaken in believing that Plaintiff's speech was defamatory, or (2) Chief Burdess could not arrest Plaintiff based on his conduct after he was asked to stop speaking, as explained in section II above. The district court simply stated

> [T]he Court turns to qualified immunity. Defendants are not entitled to it. The right to equal protection from selective enforcement was clearly established by October 2022. The principles discussed above - prohibiting viewpoint discrimination and retaliation - apply with equal force to Equal Protection claims. Officials cannot enforce rules selectively based on hostility to a speaker's viewpoint. *Wayte*, 470 U.S. at 608.

(App. 1684; R. Doc. 62, at 31).

In mistakenly deciding the speakers were similarly situated in all material respects, the court took a myopic view that failed to account for the totality of the circumstances. Those circumstances that differentiated Plaintiff's comments from the others' comments. Preliminarily, Plaintiff accused Officer Winters of *physical violence*. That is substantially different from the others speakers' suggestions that the inspector was engaging in a kind of white-collar financial misconduct.

More importantly, though, Plaintiff's comments were materially different from the other because Plaintiff's comments came with social baggage, including the widespread "Defund the Police" campaigns and protests following the death of

Appellate Case: 26-1508     Page: 49     Date Filed: 06/05/2026 Entry ID: 5648090

George Floyd. They also coincided with larger threats of violence directed toward the City and its officials following the Galanakis arrest – which had occurred only weeks prior to Plaintiff's first arrest. Chief Burdess testified that additional officers were present because of social media threats of protests and potential violence targeting officers. (App. 1056; R. Doc. 27-2, at 619 ("There was some violence that was thrown out there, there was some targeting of officers, so there was a heightened sense of we don't know what might happen.")). The City also received "thousands of hateful" and "threatening" emails; so many, in fact, that the City deleted Mayor Hansen's email address. (App. 1119; R. Doc. 27-2, at 682.) If Defendants treated Plaintiff's comments differently (a point Defendants do not concede), it was only because the comments were materially different from the others, particularly in light of the social upheaval surrounding Galanakis' arrest.

Nonetheless, even accepting the district court's comparator finding for purposes of argument, the only authority cited for its clearly established law finding was *Wayte v. United States*, 470 U.S. 598 (1985), which involved selective prosecution of individuals who refused Selective Service registration. *Wayte* is legally and factually remote from a mayor applying a written decorum rule at a city council meeting and does not place Mayor Hansen's specific enforcement decisions beyond debate.

38

### B. October 24

The district court's October 24 selective enforcement finding is unsupported by the record. The district court concluded 'other speakers violated meeting rules without consequence' but cited no factual record support whatsoever. (App. 1682; R. Doc. 62, at 29). Without identifying specific similarly situated comparators who violated the same rule and were not stopped, the selective enforcement claim cannot survive summary judgment. *Sanimax*, 95 F.4th at 564. The district court's failure to identify such comparators defeats the prima facie element of the claim, and its failure to cite factually analogous precedent is fatal to its clearly established law finding.

As the district court recognized, "no one had ever been arrested at a Newton city council meeting before Petersen, despite years of contentious public meetings and the Rule's presence on the agenda since 2019." (*Id*.) What this history shows is the *absence* of a predisposition for viewpoint-based discrimination. The fact that other citizens, for years, had been able to openly complain about or criticize the City undermines, not supports, the district court's findings.

Appellate Case: 26-1508     Page: 51     Date Filed: 06/05/2026 Entry ID: 5648090

**IV. THE DISTRICT COURT ERRED IN IMPOSING *MONELL* LIABILITY AGAINST THE CITY WHERE THE RULE HAD NEVER BEEN JUDICIALLY INVALIDATED, THE CITY RELIED ON THE OPINION OF ITS LEGAL COUNSEL, AND THE UNDISPUTED FACTS ESTABLISHED NEITHER AN UNCONSTITUTIONAL OFFICIAL POLICY NOR A PLAN TO RE-ARREST PLAINTIFF.**

**A. The Court has appellate jurisdiction over the City's appeal.**

The claims against the City are reviewable under the doctrine of pendent appellate jurisdiction, which applies where pendent claims are "inextricably intertwined" with the qualified immunity defense. *Shannon v. Koehler*, 616 F.3d 855, 866 (8th Cir. 2010). An issue is inextricably intertwined "only 'when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well.'" *Id.* (quoting *Lockridge v. Bd. of Trustees of Univ. of Arkansas*, 315 F.3d 1005, 1012 (8th Cir. 2003)). Monell claims satisfy this standard where "resolution of the qualified immunity claim 'necessarily resolves the pendent claim[s] as well.'" *Galanakis v. City of Newton, Iowa*, 134 F.4th 998, 1003 (8th Cir. 2025). Because individual liability is a predicate for municipal liability, Plaintiff's *Monell* claims are inextricably intertwined with Defendants' qualified immunity defense. *Id.*

**B. *Monell* Liability**

To establish a *Monell* claim, a plaintiff must show a constitutional violation resulting from a municipal policy, an unofficial custom, or a failure to train or supervise. *Robbins v. City of Des Moines*, 984 F.3d 673, 681–82 (8th Cir. 2021). Respondeat superior liability is unavailable. *Rogers v. King*, 885 F.3d 1118, 1122

Appellate Case: 26-1508    Page: 52    Date Filed: 06/05/2026 Entry ID: 5648090

(8th Cir. 2018). A plaintiff must show that through its deliberate conduct the municipality was the "moving force" behind the injury, demonstrating both the requisite degree of culpability and a direct causal link between the municipal action and the deprivation of federal rights. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A *Monell* claim fails as a matter of law where there is no underlying constitutional violation. *McElree v. City of Cedar Rapids*, 372 F. Supp. 3d 770, 794 (N.D. Iowa 2019) (quoting *Hayek v. City of St. Paul*, 488 F.3d 1049, 1055 (8th Cir. 2007)).

## C. The district court erred in finding the City liable under *Monell*.

Plaintiff alleged municipal liability for Counts III-IV (First Amendment retaliation), Counts VI-VII (Fourth Amendment wrongful arrest), and Counts VIII-IX (selective enforcement). The district court granted summary judgment to Plaintiff after finding the Rule was unconstitutional official policy, that Mayor Hansen possessed final policymaking authority, and that the City ratified his unconstitutional conduct - including by devising a plan after October 3 to suspend future meetings, arrest Plaintiff, charge him with disorderly conduct, and serve him with a no-trespass order if he returned and again criticized city officials. (App. 1685-88; R. Doc. 62, at 32-35.) The district court then made a single, undifferentiated conclusion that the City was liable for *all* of Plaintiff's constitutional violations. That conclusion was erroneous for 3 reasons.

41

**1.  The district court applied the wrong standard**.

On Plaintiff's motion for summary judgment, the district court was required to view the evidence in the light most favorable to Defendants and to draw all reasonable inferences in their favor. *Nieters*, 83 F.4th at 1105. It did not. For example, the district court ascribed discriminatory intent to the post-October 3 meeting between Mayor Hansen, Chief Burdess, and the city administrator. But at a minimum, the record allows different inferences to be drawn. Both Mayor Hansen and Chief Burdess testified that they had never previously encountered a situation like October 3. As Chief Burdess put simply, "this wasn't something we were prepared for." (App. 1039; R. Doc. 27-2 at 602.) To avoid leaving possible future events up to chance, the Mayor, Chief and city administrator met so they could develop a protocol for handling similar disruptions in the future, should they occur. Nothing in the record supports that Mayor Hansen and Chief Burdess had reason to know Plaintiff would return, that he would engage in the same conduct, or that the protocol was designed specifically to target him. Rather than drawing reasonable inferences in Defendants' favor, the district court effectively penalized them for taking proactive steps to ensure they were prepared for future disruptions.

The district court similarly mischaracterized the staffing of the October 24 city council meeting. The court interposed a negative and discriminatory gloss over Defendants' actions. Rather than placing Plaintiff's comments at the city council

42

meeting, and the City's follow-up meeting, in the broader context of events surrounding the Galanakis arrest, and giving Defendants the benefit of all reasonable inferences, the district court *weighed* the evidence and decided the officers' presence were part of a "coordinated" and "premeditated" arrest plan. (App. 1687; R. Doc. 62, at 34.) That inference was not reasonable; nor was the court weighing the evidence permissible on Plaintiff's motion for summary judgment. *Sanimax*, 95 F.4th at 558 ("In ruling on a summary judgment motion, a district court must not 'weigh evidence or make credibility determinations.'") (internal citation omitted).

The district court's failure to apply the appropriate standard, and to construe the facts favorably to Defendants, requires reversal.

### 2. The undisputed facts do not support the existence of a plan to re-arrest Plaintiff.

The district court's characterization of the post-October 3 meeting as producing a plan to arrest Plaintiff is unsupported by the record. What the meeting produced was a general protocol: if anyone disrupted a future meeting, Mayor Hansen would suspend the meeting and refer the matter to law enforcement. (App. 1049-54; R. Doc. 27-2, at 612-17.) Even then, arrest was not predetermined. Between the October 3 and October 24 meetings, Defendants drafted a no-trespass order specifically to provide "a resource there [at the city council meeting] to keep us from taking that person to jail." (App. 1040; R. Doc. 27-2, at 603). Law

43

enforcement would act only "if there was a direction to leave . . . or if they were disorderly or some other crime was occurring . . . . It could be an arrest or removal of some form," and the person would first be given the opportunity to voluntarily leave. (App. 1051, 1054; R. Doc. 27-2, at 614, 617.) The undisputed facts therefore do not support the district court's finding that the City made a plan to unconstitutionally arrest Plaintiff.

### 3. Even if such a plan existed, it did not exist prior to Plaintiff's October 3 arrest.

Even accepting the district court's characterization of the post-October 3 meeting, there is no evidence whatsoever that any such plan existed before the October 3 arrest. A municipal policy or custom must have existed at the time of the alleged constitutional violation to support *Monell* liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). A plan developed after October 3 cannot form the basis for liability arising from that arrest.

### 4. The Citizen Participation Rule Was Not an Official Policy of the City.

The district court concluded the Rule constituted official city policy as a written directive governing citizen participation but cited no supporting authority. Municipal liability attaches only where a deliberate choice is made "by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 481-84. Although Mayor Hansen drafted

44

the Rule and added it to council agendas, the City Council retained authority to override him by majority vote. (App. 749-750; R. Doc. 27-2, at 312-313). The council's decision not to exercise that authority does not make Mayor Hansen the City's final policymaker. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) ("Simply going along with discretionary decisions made by one's subordinates [] is not a delegation to them of the authority to make policy.").

Moreover, the Rule had been in place since 2019, reviewed and approved by city attorneys, read aloud at every council meeting without objection from the council member who was an attorney, and affirmatively declared constitutional by outside legal counsel as recently as October 24, 2022. (App. 138-39; R. Doc. 24-1, at 13-14, ¶ 51; App. 1025-26; R. Doc. 27-2, at 588-89). A rule that has never been challenged or judicially invalidated and that legal counsel has approved does not bear the hallmarks of a deliberately unconstitutional municipal policy.

Because the undisputed facts support neither an unconstitutional official policy nor a plan to arrest Plaintiff, and because the district court failed to analyze each constitutional claim individually, its *Monell* ruling cannot stand. Finally, if this Court reverses on the individual Defendants' qualified immunity, and finds no underlying constitutional violation, the *Monell* claims fail as a matter of law. *McElree v. City of Cedar Rapids*, 372 F. Supp. 3d 770, 794 (N.D. Iowa 2019) (citing *Hayek v. City of St. Paul*, 488 F.3d 1049, 1055 (8th Cir. 2007)).

## CONCLUSION

For the foregoing reasons, Defendants-Appellants City of Newton, Iowa, Mayor Michael Hansen, and Police Chief Rob Burdess respectfully request that this Court reverse the district court's order as to Counts I-IV and VI-IX. Mayor Hansen and Chief Burdess are entitled to qualified immunity on Plaintiff's First Amendment retaliation, Fourth Amendment unreasonable seizure, and selective enforcement claims because the law did not clearly establish that their conduct was unconstitutional and because neither was personally involved in both of Plaintiff's arrests. The claims against the City of Newton fail as a matter of law because the undisputed facts do not support Monell liability - the Rule had never been judicially invalidated, the City acted in reliance on legal counsel's advice, and no unconstitutional plan to arrest Plaintiff existed at the time of either arrest.

DATED this 3rd day of June, 2026.

> CITY OF NEWTON, IOWA, MICHAEL
> HANSEN AND ROB BURDESS,
> Defendants / Appellants
>
> By: */s/ Cathy S. Trent-Vilim*
> Jason C. Palmer, #AT0006089
> Georgia R. Rice, #AT0015229
> LAMSON DUGAN & MURRAY LLP
> 6400 Westown Parkway, Suite 280
> West Des Moines, IA 50266
> Tel: (515) 823-0458
> Fax: (515) 298-6536
> jpalmer@ldmlaw.com
> grice@ldmlaw.com

46

Cathy S. Trent-Vilim, #AT0012856
LAMSON DUGAN & MURRAY LLP
10306 Regency Parkway Drive
Omaha, NE 68114
Tel:  (402) 397-7300
ctrent-vilim@ldmlaw.com

*ATTORNEYS FOR DEFENDANTS / APPELLANTS*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(B) because it contains 11,349 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 version 2602 in 14-point Times New Roman font.

*/s/ Cathy S. Trent-Vilim*
Cathy S. Trent-Vilim

## CERTIFICATE OF COMPLIANCE WITH 8TH CIR. R. 28A(h)(2)

This document complies with 8th Cir. R. 28A(h)(2) because it has been scanned for viruses with the most recent version of a commercial virus scanning program and was found to be free of viruses.

*/s/ Cathy S. Trent-Vilim*
Cathy S. Trent-Vilim

47

# CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026, I electronically filed the foregoing Brief of Appellants with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that once this brief is approved, I will mail by federal express, 10 copies of Defendants/Appellants' Brief to the Eighth Circuit Clerk of Court, and mail a copy to counsel of record via regular United States first class mail, postage prepaid.

*/s/ Cathy S. Trent-Vilim*
Cathy S. Trent-Vilim

4906-7920-0176, v. 8

Appellate Case: 26-1508    Page: 60    Date Filed: 06/05/2026 Entry ID: 5648090